UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Commodity Futures Trading Commission, | ) | Civil Action No. 4:04-23302-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | REPORT AND |
| | ) | RECOMMENDATION |
| George Heffernan, a/k/a George W. | ) | |
| Marshall, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

This matter is before the court on plaintiff's motion for summary judgment (Document # 61) filed February 21, 2006 (Document # 61). A notice of hearing was sent to the parties on April 20, 2006, scheduling a hearing for June 7, 2006, at 10:00 a.m. The hearing was convened as scheduled. Counsel for the plaintiff was present; however, plaintiff failed to appear.

Plaintiff files its motion pursuant to Rule 56 of the *Federal Rules of Civil Procedure*. The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it and showing a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977

F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celetex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves"). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Celetex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

Because the defendant is proceeding *pro se*, he was advised on or about February 21, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to adequately respond[1] to the plaintiff's motion for summary judgment could result in the court granting plaintiff's motion

---

[1] The order states that failure "to respond adequately, the motion may be granted, thereby ending the case. Careful attention should be given to the requirements of Rule 56(e) concerning the necessity for affidavits . . . to be based upon personal knowledge, to contain facts admissible in evidence, and to be executed by a person who would be competent to testify as to matter contained in the affidavit if he or she was called to the witness stand . . . . submission of a brief . . . will not be sufficient alone to withstand a properly supported motion for summary judgment."

and ending the case.

A pro se litigant's pleadings are accorded a liberal construction. Hughes v. Rowe, 449 U.S. 5, 66 L.Ed. 163, 101 S.Ct. 173 (1980); Haines v. Kerner, 404 U.S. 519, 30 L.Ed.2d 652, 97 S.Ct. 594 (1972); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). A court may not construct the Plaintiff's legal arguments for him. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986).

Defendant filed a written response to plaintiff's motion for summary judgment on March 6, 2006. He fails to present affidavits or other proper evidence with his opposition memorandum. He states that the plaintiff is fabricating this case and that he only checks his mail box once a month and therefore never knows about the hearing until they have been held. As stated above, the hearing on this motion was scheduled well in excess of one month prior to the hearing. He also states that he is depressed[2] and is seeking an attorney. Defendant filed a motion on March 6, 2006, seeking an additional sixty (60) days to obtain an attorney and to respond to plaintiff's motion for summary judgment. The undersigned issued an order on March 23, 2006, granting defendant's motion and allowing him sixty (60) days from March 23, 2006, to obtain an attorney and respond to plaintiff's motion for summary judgment. Since March 23, 2006, no attorney has made an appearance on behalf of defendant and defendant has not responded to plaintiff's motion for summary judgment.

_____

[2] In support of his representation that he suffers from depression, he submitted a letter from a physician date 2004.

The facts set forth by the plaintiff are established through the deposition of defendant, request for admissions under Rule 36, Fed.R.Civ.P., deemed admitted[3], as well as other documents and certifications submitted by plaintiff with its motion. The facts in essence are undisputed. Therefore, the facts generally are presented as set forth by the plaintiff.

### *Facts*

The Commodity Futures Trading Commission (CFTC) and the United States District Court for the Southern District of Georgia have previously found defendant liable for violations of the anti-fraud provisions of the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.* and Commission Regulations, 17 C.F.R. §§ 1 *et seq.* See CFTC v. Heffernan, 245 F.Supp.2d 1276 (S.D.Ga. 2003).

From February 2003 forward, defendant acted as an unregistered commodity trading advisor. He operated under the name "Index Analysis Service," and marketed and sold three futures trading methods for S&P 500 futures contracts: (1) the Index Analysis No Loss - Hedge Trading Method (No Loss Method); (2) the Index Analysis Stop Loss - Hedge Trading Method (Stop Loss Method)[4]; and

---

[3] Plaintiff filed a motion for sanctions on or about September 15, 2005 (Document # 47). Within that motion plaintiff sought a ruling that its First Request for Admissions and Second Request for Admissions be deemed admitted because defendant failed to respond to the request. A hearing was held November 1, 2005, and defendant failed to appear. Additionally, defendant did not file a written response to plaintiff's motion. The court granted plaintiff's motion by order entered November 2, 2005, except to the extent the Second Request for Admissions sought admissions of conclusions of law, the motion was denied.

[4] Defendant sold the No Loss Method for a fee of $25,000 which included the Stop Loss Method. The Stop Loss Method could be purchased separately for $5,000. Defendant's Depo. at 83-84. The subscription service was also included in the $25,000 fee, which included posting of trades to follow, entry points and profit targets – when to buy and when to sell. Defendant's Depo. at 84-87.

-4-

(3) a "support and resistance" trading method.[5]  Additionally, defendant sold an electronic mail

subscription service that provided, among other things, trading signals for S&P 500 futures

contracts.[6]  Defendant offered these trading products to the public via an internet website located at

www.indexanalysisservice.com.[7]    In conjunction with the sale of these products, defendant

provided access to an internet based, text chat room, through which he disseminated buy and sell

signals for trading S&P 500 futures contracts.[8]  Defendant received at least $230,000 through the sale

of these products and services.[9]

　　　In July 2004, defendant established Index Analysis Pool, L.P., (Index Pool), as a South

Carolina Limited Partnership.[10]  Index Pool was a commodity pool "created to engage in speculative

trading of S&P500 futures contracts.[11]  Defendant was the general partner in the Index Pool at all

times from July 2004.[12]  Defendant marketed the subscriptions in Index Pool as a means for investors

---

[5]  Admissions # 49, 53,54, 56, 58; Defendant Depo. at 80-81,116; Exh. A, attach. #10 to Plaintiff's Motion.  Defendant sold this trading method for $399.  Defendant's Depo. at 81.

[6]  Admissions # 58; Defendant Depo. at 78-81; Exh. A., attach. # 10 to Plaint. Motion. Defendant charged a monthly fee of $100 for a subscription to the email service.  Defendant Depo. at 79.

[7]  Defendant Depo. at 116.

[8]  Defendant Depo. at 84, 87.

[9]  Admissions # 59; Exh. A, attach. 8 to Plaint. Motion; Defendant Depo. at 112.

[10]  Admissions # 1; Gomersall Decl. ¶ 4, Exh. 4.

[11]  Admissions # 3; Defendant Depo. at 122-23; Exh. A, attach. 13, 19, 22, 23, and 24 to Plaint. Motion.

[12]  Admission # 2; Defendant Depo. at 123.

to utilize his trading methods without having to purchase the methods.[13]

Defendant served as the Index Pool's commodity pool operator (CPO).[14]    However, defendant was never registered as a CPO with the Federal Trade Commission.[1516]  He structured the Index Pool to pay him 0.5% of the Index Pool's value each month (6% per year), and 44% of any realized trading profits.[17]  Defendant structured the Index Pool to sell subscriptions to up to ninety-nine individuals, with an aggregate gross capital contribution of up to twenty million dollars.[18]  He used the mail, electronic mail, and the internet in connections with his business as CPO of the Index Pool.[19]  He sold subscriptions totaling $244,000 to Index Pool to seven individuals.[20]

Defendant never actually traded the No Loss Method or Stop Loss Method he marketed under the Index Analysis Service name.[21]  Rather, he asserted that his performance representations for these

---

[13]  Defendant Depo. at 127, 137-38; Exh. A, attach. 13, 15, 19, 22, and 24 to Plaint. Motion.

[14]  Admissions # 4; Defendant Depo. at 123; Exh. A, attach. 19 to Plaint. Motion.

[15]  Admission # 6; Defendant Depo. at 45.

[16]  Commission Regulation 4.13(a)(4) provides that registration exemption for CPOs that operate pools in which interest in the pool are offered and sold without marketing to the public in the United States, among other criteria.

[17]  Admissions ¶¶ 22 and 23; Defendant's Depo. at 125-26; Exh. A, attach. 19, 22, and 24.

[18]  Admissions # 5,34,46, 47; Defendant's Depo. at 130, 137; Exh. A, attach. 13, 15, 18, 19, 22, and 24.

[19]  Admissions # 35, 36, 37, 38, 39, 62, 64, 65 ; Defendant's Depo. at 117, 127-31, 138-39; Exh. A, attach. 10, 13, 15, 16 and 18; Exh. 13, 15, 16, 17, 18, and 19 to Plaintiff's Motion.

[20]  Admissions # 12; Defendant Depo. at 155-56; Exh. A, attch. 20 to Plaint. Motion; Plaintiff's responsive memorandum (Document #74) to defendant's motion to return funds. Defendant refunded funds to two Index Pool investors.

[21]  Defendant Depo. at 131-32.

methods were based on hypothetical trading and customer trading results.[22]  However, he is unable

to cite any performance record, whether real or hypothetical, that documents the performance of his

trading methods.[23]  In fact, when defendant actually traded futures contracts, he never obtained a

sustained profit.[24]  During the period of August 1999 through November 2003, defendant exercised

trading authority over three commodity futures trading accounts: (1) Lind Waldock and Company

account 711585; (2) Peregrine Financial Group account E15-14710; and (3) Global Futures account

PJ01PB165.[25]  The aggregate result of defendant's trading in these accounts is a net loss of over

twenty-six thousand dollars.[26]  Defendant solicited and sold his CTA services and Index Pool

services without disclosing his trading history.[27]

On February 25, 2003, defendant represented through his internet website that each futures

contract traded pursuant to his "No Loss" method produces "from 10 to 65 points of profit per week

---

[22]  Defendant Depo. at 117, 122, 131-32.

[23]  Defendant has refused to produce documentation explicitly sought by plaintiff of hypothetical trading results, customer trading results, or otherwise describing or verifying his trading methods, trading signals and representations.  The undersigned issued an order dated June 22, 2006, sanctioning defendant under Rule 37, Fed.R.Civ.P., including, *inter alia*, a prohibition against defendant using any documentation in motion or trial that he has failed to produce as ordered on November 2, 2005.

[24]  Admissions 72; Exh. A, attach. 4 and 5 to Plaintiff's Motion (Over a four month period or longer, defendant never produced a profit).

[25]  Admissions # 7, 8, 9, 10, and 11; Exh. A, attach. 4 and 5; Defendant's Depo. at 58-61, 65-68.

[26]  Id.

[27]  Admissions 12, 13, 24, 25, 26, 28, 29, 30, 31, 69, 70, 71; Defendant Depo. at 155-56, 160-162, 164, 167-170, 172-180,  181-85, 188-91; Exh. A., attach. 19,20, 22, 23, and 24 to Plaintiff's Motion.

with no losses."[28]  He published his "No Loss" method through the following representations during the period February 2003 through December 16, 2004:

    a.  "This is a no loss - hedge trade!"

    b.  "The hedge trading method does not have losses."

    c.  "For each contract, this trade generates from 0 to 65 points of profit per week with no losses."[29]

He promoted the Index Pool on his internet website during the period of February 2003 through the following statement, "This is a no loss hedge fund!".[30]

Defendant delivered electronic mail solicitations for Index Pool to customers in Alaska, North Carolina, Texas, and Iowa in 2004.[31]  The following representations were made in emails concerning the Index Pool and the trading methods he represented he would employ in trading pool funds:

> "It is mathematically impossible for the Index Analysis Hedge Trading Method to lose."

> "Based on the average case results the projected return on $350,000 in the fund will be $317,200 per year."

> "The minimum projected results is a 25% return on investment each year."

> "The Stop Loss Version produces an average of 12 points per week."

> "The No Loss Hedge Trading Method does not have losses."

---

[28]  Exh. A, attach. 10; Defendant's Depo. at 117-18; Gomersall Decl. ¶¶ 1 and 2, attach. 1.

[29]  Admissions # 62, 63, 64, 65; Defendant's Depo. at 117-118; Gomersall Decl. ¶ 3, attach. 3; Howe Decl. ¶ 5, attach. 1; Exh. A, attach. 10 to Plaintiff's Motion.

[30]  Id.

[31]  Plaintiff's Statement of Material Facts to Which There Is No Genuine Issue for Trial (Document # 62)(SMF) ¶¶ 27, 30, 31.

"Worst case results are projected to be 25 points on the no loss with a 1 lot and 40 points on the stop loss with a 5 lot."

"No Loss - Hedge Fund."

""100% accurate."

"25% to 100% Return on Investment."[32]

Defendant distributed a two page brochure via the U.S. mail, among other means, to Index Pool participants and prospective Index Pool participants[33], which marketed the pool through the following representations:

"No Loss- Hedge Funds."

"100% accrate."

"25% to 100% Return."

"It is mathematically impossible for the No Loss Hedge Trading Method to lose."[34]

Between September 2003 and December 2004, defendant published at least twenty-eight advertisements for his CTA services and Index Pool in Investor's Business Daily Newspaper and Futures Magazine that contained the following representations:

"Hedge Trading Method, Very Profitable, 100% accurate, No Losses."

"25% to 100% return."

"Investor needed for a very profitable, 100% accurate, no loss, Hedge Trading

---

[32] SMF ¶¶ 37, 30, and 31.

[33] SMF ¶32.

[34] SMF ¶33.

Method."[35][36]

Defendant solicited customers and Index Pool participants through testimonials that characterized his trading systems as highly lucrative, including as follows: "Beginning with my first trade I have done nothing but profit. "The System does not lose" and "after six months [of trading] [I]had all profitable trades with no losses . . ."[37]  These testimonials were fabricated.[38]

Defendant delivered subscription agreements for Index Pool to seven individuals between July 2004 and December 2004.[39]  Either prior to or at the time of delivery, he did not disclose or set forth:

a.  The performance of Lind Waldock account 711585;

b.  The performance of PFG account E15-14710;

c.  The performance of Global Futures account PJ01PB165;

d.  The Commission's September 6, 2000 order, finding that defendant violated anti-fraud provisions of the Act and Regulations;

---

[35]  Each of these advertisements were published without a disclaimer.

[36]  SMF ¶¶ 34-36, 38, and 39.

[37]  SMF ¶¶ 28 and 29.

[38]  While the testimonials have first names associated with them, defendant has failed to produce evidence that these individuals actually exist.  He indicated in his deposition taken October 12, 2005, that he would provide contact information for "Glen" and "Stuart," but could not recall a home state or other information about these purported customers.  See Defendant's Depo. at 145-47.  In fact, by admission they were fabricated.  See Admissions ## 40 and 41.

[39]  Defendant funded an account with Rosenthal Collins Group, LLC with $140,000 obtained from the sale of Index Pool subscriptions.  Admissions #7.  He opened the account under the name of "George Marshall" and used a fictitious social security number and a driver's license that he altered to reflect the name "George Marshall."  Admissions ## 44, 45, 77 and 78.

-10-

e.  The Commission's September 2001 enforcement action filed against defendant in the Southern District of Georgia;

f.  The commodity pool risk disclosure statement set forth in Commission Regulation 4.24(b), 17 C.F.R. §4.24(b).

g.  The trading profit Index Analysis Pool must realize in the first year of a participant's investment to equal all fees and expenses such that the participant will recoup his initial investment.[40]

### *Discussion*

### *7 U.S.C. §6o(1) and 17 C.F.R. 4.41(a)*

Plaintiff asserts a cause of action under 7 U.S.C. §6o(1)(A) of the Act which makes it unlawful for "a commodity trading advisor . . . commodity pool operator . . . by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant." §6o(1)(B) makes it unlawful for such a person "to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant."

§ 4.41(a)(1) and (2) prohibits the same conduct as §6o(1)(A) and (B), respectively, with respect to a CPO's advertising. 17 C.F.R § 4.41(a).  §4.41(a) provides:

> No commodity pool operator, commodity trading adviser, or any principal thereof, may advertise in a manner which:
>
> (1) Employs any device, scheme or artifice to defraud any participant or client or prospective participant or client; or

---

[40]  ¶ 51.

(2) Involves any transaction, practice or course of business, which operates as a fraud or deceit upon any participant or client or nay prospective participant or client.

### Commodity Pool Operator

Section 1a(5) of the Act, 7 U.S.C. § 1a(5), and Commission Regulation 1.3(cc), 17 C.F.R. §1.3(cc), define a CPO as "any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith solicits, accepts or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market . . . ."

Clearly, defendant falls within the parameters of this definition: he is the general partner and operator or Index Pool, an investment syndicate organized to pool funds to trade in S&P 500 index futures contracts; he has solicited funds in connection therewith; and he has sold subscription agreements for the purpose of trading futures.

### Commodity Trading Advisor

7 U.S.C. §1a(6) defines a CTA as

any person who

(i) for compensation or profit, engages in the business of advising others, directly or indirectly or through publications, writings, or electronic media, as to the value of or the advisability of trading in

(I) any contract of sale of a commodity for future delivery made or to be made on or subject to the rules of a contract market . . .

. . . ; or

(ii) for compensation or profit, and as part of a regular business,

-12-

issues or promulgates analyses or reports concerning any of the activities referred to in clause (i).

Defendant provided commodity futures trading advice for compensation or profit by selling the trading techniques and electronic mail subscription service. The information provided by defendant was designed to advise investors trading S&P500 futures contracts.

§ 6o(1)(A) and Regulation 4.41(a)(1) of the Act require proof of scienter, though scienter is not required to prove a violation of 6o(1)(B) and Regulation 4.41(a)(2), so long as the conduct operated as a fraud on the customer.[41]  Commodity Trend Serv. V. Commodity Futures Trading Commission, 233 F.3d 981, 993 (7th Cir. 2000); CFTC v. Heffernan, 245 F.Supp.2d 1236, 1290-92 (S.D.Ga. 2003(citing supporting opinions).  To prove scienter, the misrepresentation must be made with "an intent to defraud or a willful and reckless disregard of the client's bests interests." Messer v. E.F. Hutton & Co., 847 F.2d 673, 678 (11th Cir. 1988).  Conduct involving "highly unreasonable omissions or misrepresentations . . . that present a danger of misleading [customers] which is either known to the Defendant or so obvious that Defendant must have been aware of it" demonstrates scienter. Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001).

Additionally, the misrepresentation or omission must be material.  See CFTC v. R.J. Fitzgerald & Co., 310 F.3d 1321 (11th Cir. 2002).  Misrepresentations or omissions are material if a reasonable investor would consider it important in deciding whether to make an investment. R.J. Fitzgerald & Co., 310 F.3d at 1328-29 (citing Affiliated Ute Citizens of Utah v. United States, 406

---

[41]  Generally, it is not necessary for plaintiff, in an enforcement action, to prove "reliance" by the customer.  See CFTC v. International Financial Services (New York), LLC, 323 F.Supp.2d 482, 502 (S.D.N.Y. 2004); CFTC v. Rosenberg, 85 F.Supp.2d 424, 445-48 (D.N.J. 2000).  In a case involving omission of a material fact, reliance is presumed, including a case seeking restitution.  See Id.; CFTC v. Marquis Financial Management Systems, Inc. 2005 WL 3752232, p. 8 (E.D.Mich. 2005).

U.S. 128, 153-54 (1972); R & W Technical Servs, Ltd. V. CFTC, 205 F.3d 165, 169 (5th Cir. 2000). Misrepresentations and omissions concerning the likelihood of profiting from futures trading, generally, are material and violate the anti-fraud provisions of the Commodity Exchange Act. CFTC v. Wall Street Underground, Inc., 281 F.Supp.2d 1260, 1269-71 (D. Ks. 2003); CFTC v. Weinberg, 287 S.Supp.2d 1100, 1107 (C.D. Cal. 2003); CFTC v. Noble Wealth Data Info. Servs. Inc., 90 F.Supp.2d 676, 686 (D.Md. 2000); CFTC v. Avco Fin. Corp., 28 F.Supp.2d 104, 115-16 (S.D.N.Y. 1998); CFTC v. Commonwealth Fin. Group, Inc., 874 F.Supp. 1345, 1353-54 (S.D. Fla. 1994).

The facts clearly show that defendant made material misrepresentations and omissions relating to the sale of the trading techniques, the Index Pool, and in the advertisements affiliated to each. He made representations of the likelihood for success and profits and the representations were false. Also, he omitted material information. He failed to disclose the CFTC order, the order from the Southern District of Georgia, and he never realized a sustained profit trading futures in the relevant past. Additionally, defendant knew or must have known of the danger of misleading the participants by the highly unreasonable omissions and misrepresentations. He knew that his profit guarantees were false and contradicted his prior trading results. He asserts that his methods were based on hypothetical trades and the testimonials of customers; however, he fails to disclose the methods and the persons reaping the profits. And, he fabricated the testimonials of "Glen" and "Stuart."

Accordingly, plaintiff is entitled to summary judgment against defendant for violation of §6o(1) and §4.41(a).

### *7 U.S.C. §6m(1)*

Plaintiff also alleges a cause of action under 7 U.S.C. §6m(1). §6m(1) makes it unlawful for

a CPO or CTA to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as a CPO, unless registered under the Act. It is clear that defendant used the mails, telephone, electronic mail, and the internet while acting as a CPO or CTA.

The evidence suggests that defendant did not register as a CPO as he asserted that he was not required to register.[42] §6m(1) provides an exception to the registration requirement if the CTA "during the course of the preceding twelve months, has not furnished commodity trading advice to more than fifteen persons and who does not hold himself out generally to the public as a commodity trading advisor." Also 17 C.F.R. §4.13(a)(4) exempts from registration a CPO if

> (1)(i) It does not receive any compensation or other payment, directly or indirectly, for operating the pool, except reimbursement for the ordinary administrative expenses of operating the pool;
>
> (ii) It operates only one commodity pool at any time;
>
> (iii) It is not otherwise required to register with the Commission and is not a business affiliate of any person required to register with the Commission; and
>
> (iv) Neither the person or any other person involved with the pool does any advertising in connection with the pool (for purposes of this section, advertising includes the systematic solicitation of prospective participants by telephone or seminar presentation);
>
> (2)(i) None of the pools operated by it has more than 15 participants at any time; and
>
> (ii) The total gross capital contributions it receives for units of participation in all of the pools it operates or that it intends to operate do not in the aggregate exceed $400,000.
>
> (iii) . . . ;
>
> (3) For each pool for which the person claims exemption from registration under this paragraph (a)(3):
>
> (i) Interests in the pool are exempt from registration under the Securities Act of 1933, and such interests are offered and sold without marketing to the public in the United

---

[42] Defendant filed a registration exemption notice under §4.13 on December 2, 2004.

States;

(ii) . . .

. . . or

(4) . . . .

17 C.F.R. §(b)(1)(iii)(3) states that a notice of exemption "will be effective upon filing, provided the notice is materially complete."

Defendant does not qualify for any of the exemptions.  He held himself out as a CTA, he did receive, or was to receive, compensation for operating the Index Pool, he intended the Index Pool to involve up to 99 participants and $20 million, and he marketed to the public in the United States.

Clearly, the exemptions do not apply to defendant.

### *17 C.F.R. §4.21*

Plaintiff also claims that defendant violated 17 C.F.R. §4.21 which requires a CPO registered or required to be registered under the Act, "must deliver or cause to be delivered to a prospective participant in a pool that it operates or intends to operate a Disclosure Document for the pool prepared in accordance with [17 C.F.R.] §§ 4.24 and 4.25 by no later than the time it delivers to the prospective participant a subscription agreement for the pool."  §§ 4.24 and 4.25 require disclosure of the following information:

(a) Prior Litigation: §4.24(l) requires a CPO subject to the disclosure provisions of Regulation 4.21 to disclose any material administrative, civil or criminal action, whether pending or concluded, within five years preceding . . . .

(b) Cautionary Statement: § 4.24(b) requires that a disclosure document mandated by §4.21 include a specific three paragraph cautionary statement alerting prospective participants to the risks involved

-16-

with commodity pools.[43]

(c) Break Even Point:  §4.24(d)(5) provides that a disclosure document required under §4.21 must disclose the pool's break-even point.  "Break-even point" is defined as "the trading profit that a pool must realize in the first year of a participant's investment to equal all of the fees and expenses such that such participant will recoup his initial investment."  17 C.F.R. §4.10.

(d)  Trading  History:    §4.24(n)  and  4.25(c)(ii)(2)  requires  a  CPO  subject  to  the  disclosure requirements of §4.21 to disclose the performance of all accounts traded by the CPO for the most recent five calendar years, if the pool has less than a three year operating history.

Defendant delivered to seven individuals a subscription agreement which did not disclose (1) his September 2000 and September 2001 litigation; (2) the cautionary statement mandated by §4.24(b); (3) the pool's break-even point; or (4) the performance of his commodity futures trading accounts he traded with Lind Waldock, PFG, and Global Futures.  Thus, defendant has violated §4.21.

---

[43]  The disclosure required is as follows:

RISK DISCLOSURE STATEMENT

YOU SHOULD CAREFULLY CONSIDER WHETHER YOUR FINANCIAL CONDITION PERMITS YOU TO PARTICIPATE IN A COMMODITY POOL.  IN SO DOING, YOU SHOULD BE AWARE THAT FUTURES AND OPTIONS TRADING CAN QUICKLY LEAD TO LARGE LOSSES AS WELL AS GAINS.  SUCH TRADING LOSSES CAN SHARPLY REDUCE THE NET ASSET VALUE OF THE POOL AND CONSEQUENTLY THE VALUE OF YOUR INTEREST IN THE POOL.  IN ADDITION, RESTRICTIONS ON REDEMPTIONS MAY AFFECT YOUR ABILITY TO WITHDRAW YOUR PARTICIPATION IN THE POOL.

FURTHER, COMMODITY POOLS MAY BE SUBJECT TO SUBSTANTIAL CHARGES FOR MANAGEMENT, AND ADVISORY AND BROKERAGE FEES.  IT MAY BE NECESSARY FOR THOSE POOLS THAT ARE SUBJECT TO THESE CHARGES TO MAKE SUBSTANTIAL TRADING PROFITS TO AVOID DEPLETION OR EXHAUSTION OF THEIR ASSETS.  THIS DISCLOSURE DOCUMENT CONTAINS A COMPLETE DESCRIPTION OF EACH EXPENSE TO BE CHARGED THIS POOL AT PAGE (insert page number) AND A STATEMENT OF THE PERCENTAGE RETURN NECESSARY TO BREAK EVEN, THAT IS, TO RECOVER THE AMOUNT OF YOUR INITIAL INVESTMENT, AT PAGE (insert page number).

THIS BRIEF STATEMENT CANNOT DISCLOSE ALL THE RISKS AND OTHER FACTORS NECESSARY TO EVALUATE YOUR PARTICIPATION IN THIS COMMODITY POOL.  THEREFORE, BEFORE YOU DECIDE TO PARTICIPATE IN THIS COMMODITY POOL, YOU SHOULD CAREFULLY STUDY THIS DISCLOSURE DOCUMENT, INCLUDING A DESCRIPTION OF THE PRINCIPAL RISK FACTORS OF THIS INVESTMENT, AT PAGE (insert page number).

### *Conclusion*

As set forth above, defendant has violated 7 U.S.C. §6o(1)(A) and (B), 17 C.F.R. §4.41(a)(!) And (a)(2), 7 U.S.C. §6m(1), and 17 C.F.R. §4.21.  Plaintiff, as the moving party has presented sufficient evidence that no genuine issue of material fact exists, and that it is entitled to judgment as a matter of law under Rule 56.  Defendant has failed to come forth with affidavits or other appropriate evidence showing a genuine issue of material fact for trial.  Based on the record as presented, no reasonable juror could find otherwise.

### *Remedy*

In the event the district judge agrees that plaintiff is entitled to summary judgment as discussed herein, the parties are to submit any additional arguments and evidence  within (20) days of the entry of the district judge's order addressing the appropriate penalty, disgorgement, or other remedy.

Defendant filed a motion (Document # 66) to release funds governed by the *Ex Parte* Statutory Restraining Order entered January 11, 2005.  Specifically, defendant requests that the funds submitted to defendant for investment in the Index Pool be returned to the investors.  By response of Plaintiff filed on March 24, 2006, plaintiff does not object to the release of these funds provided the distribution is in accordance with the terms of its proposal contained in its motion.  In its responsive motion, plaintiff sets forth the four individuals entitled to restitution of their funds submitted to defendant.  Additionally, the funds located in accounts located at Rosenthal Collins Group, Inc. and Bank of America, N.A., containing in excess of $190,000 are identified as the funds submitted by these four individuals.  The funds in the accounts have earned interest since deposit. The date the deposits were made into the accounts in not reflected in the record.  As of March 24,

2006, the accrued interest totaled approximately $2,000 (Two Thousand Dollars) and should be distributed to the investors relative to their investment and the date their funds were deposited.. Therefore, **the plaintiff is directed to obtain from Rosenthal Collins, Inc. and Bank of America, N.A., the applicable interest rates on the respective accounts since July 22, 2004, as well as the dates of the deposits, or other credits, and withdrawals, or other debits, into the accounts since July 22, 2004.  Plaintiff shall obtain this information within 20 (twenty) days of the date of this Report and Recommendation.**  The court can then determine the appropriate amount of interest due to each investor.[44]   It is recommended that after plaintiff has submitted this information, defendant's motion be granted and the funds returned to the investors in accordance with the proposed distribution submitted by plaintiff, plus applicable interest earned.

For the foregoing reasons, it is Recommended that plaintiff's motion for summary judgement (Document # 61) be granted as set forth herein, and that defendant's motion to release funds (Document # 66) to the Index Pool investors be granted as set forth herein.


June 23, 2006                                              s/Thomas E. Rogers, III
Florence, South Carolina                          Thomas E. Rogers, III
                                                                  United States Magistrate Judge


**The parties' attention is directed to the important information on the attached notice.**

---

[44]   From plaintiff's responsive motion, it appears that two other investors submitted funds to defendant which was later refunded by defendant.  It is not clear whether the funds where deposited into these accounts.  Nonetheless, the refunds were issued a short period after the funds were submitted to the defendant.

### Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
### &
### The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, <u>but</u> <u>not</u> thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503

-20-
